John H. Crozier, Special J.,
delivered the opinion of the Court.
This is a suit brought by the plaintiff in error in the Circuit Court of Washington county against the defendant in error for a libel.
To comprehend the principles of law involved in the cáse, it is necessary to premise the following facts, which appear in the record:
An angry and very disgraceful controversy had been waged between one Lemon Bennet and Stanford the defendant, by means of publications through the newspapers, and which were repeated in the form of pamphlets Or circulars. Stanford, the defendant, had also been engaged in litigation with one Samuel Peoples. They had two suits before justices of the peace, in which Peoples charged that Stanford had committed forgery by interlining one of two bonds which Peoples had given him — the one a title-bond, and the other a bond to deliver possession of a tract of land at a given time. The inter-lineation charged was the insertion of a condition that Peoples was to give Stanford twenty dollars’ rent for not *522 delivering possession of the tract of land, and by this means he obtained a credit on his note for' the twenty dollars, and Peoples sued him to recover it back. Haws, the plaintiff below and in this Court, acted as the friend of Peoples in his litigation with Stanford, and knew about the facts that had transpired in their suits. And Bennet,-being about to reply to an abusive article that Stanford had published against Mm, applied to Haws and others to give him a written statement of what had taken place in the litigation between Peoples and Stanford. Haws gave the statement in writing and was qualified to it by a justice of the peace, and Bennet inserted it in his publication. Stanford, in his reply to Bennet, charged in substance that Haws had “sworn a lie,” and that he was a perjured scoundrel; and Haws brought his suit for a libel..
On the trial of the cause, after the plaintiff’s counsel had read the article of Stanford charged to contain the libellous matter against Haws the plaintiff, the defendant’s counsel proposed to read the article of Bennet to which Stanford’s article containing the libellous matter was a reply. The plaintiff’s counsel objected to the reading of Bennet’s article, but the Court overruled the objection, and permitted it to go to the jury.
The defendant’s counsel insist that this ruling of the Court, in permitting Bennet’s article to go to the jury in a suit between Haws and Stanford, was correct, for two reasons: First, the defendant had a right to read it to explain his article containing the libellous matter, as it was a reply to Bennet’s and alluded to it; secondly, it could be introduced to show the provocation under which the libel was written and published, in mitigation of damages.
*523 We tbiWIr neither of these grounds is tenable in this case. The principles of law applicable to the points under consideration are as clear as any involved in suits for slander and libel, many of which are certainly not well settled, but are still the subject of disputation and doubt among authors and members of the legal profession.
In Gilman vs. Lowell it is said, “And where the libel sued upon has relation to another previous publication of the plaintiff, to or upon which it is a reply or comment, and which is necessary to the understanding of the libel in suit or of the occasion of its publication, such writing may be given in evidence for purposes of explanation, etc.” See 1st American Leading Cases, p. 203, and the numerous authorities there cited. In the same authority, same page, it is further said: “And with regard to previous libels by the plaintiff on the defendant, the rule is that a previous libel which was the immediate provocation of the libel sued on, and raises a fair presumption that the latter was written in the heat of blood and in consequence of the provocation, may be admitted in mitigation of damages.” It will thus be seen, from these authorities relied upon by the counsel for the defendant in error, that where previous publications are admitted to explain libellous matter or in mitigation of damages, the plaintiff in the libel suit must be the author of such publications. But that is not the case now before us. Bennet, whose article was permitted to be introduced as evidence before the jury, is not a party to this suit. It is a suit between Haws and Stanford. Why then should Bennet’s article be introduced to explain the defendant’s libel upon Haws ? Or why should any provocation given by Bennet, be it ever so great, inure to the injury of Haws and mitigate Ms damages 1 The *524 admission, then, of Bennet’s publication as evidence to the jury by the Circuit Judge was a misapplication of well-established principles of law to the facts arising in the case before him, and made the plaintiff in the case responsible for the publication of another person. He might have admitted the affidavit of the plaintiff Haws contained in Bennet’s article as evidence to the jury, but should have excluded the balance of the article. But even this was scarcely necessary, as the entire, affidavit of Haws is contained in the libellous publication of the defendant Stanford, and had been read to the jury.
The second error assigned by the counsel for the plaintiff arises under the pleadings in the cause. The pleas were the general issue not guilty, and the statute of limitations: there is no plea of justification. The defendant’s counsel, disclaiming the right under these issues to prove the truth of the libellous matter, offered evidence to prove the falsity of the affidavit of Haws, and was permitted to introduce a mass of written and oral testimony for this purpose, to which the plaintiff’s counsel objected.
The counsel for the defendant in error insist that this ruling of the Court was correct, and is embraced in the principle found in several authorities on the subject of slander and libel, and approved of by this Court in the case of West vs. Walker, 2 Swan, 33. The principle there laid down is this, that “it is competent to the defendant under the general issue to show that the charge was occasioned by the misconduct of the plaintiff, either in attempting to commit the crime, or leading the defendant to believe him guilty thereof.” Under this principle, which is now well established, a defendant is permitted to introduce testimony under the general issue in mitigation *525 of damages, which does not amount to a complete justification.
The question then arises, was the testimony offered in ' this case a justification of the libel and a surprise to the defendant, who could not be supposed to be prepared with his proof to meet the evidence of his adversary, of which the state of the pleadings gave him no notice?
One charge in the declaration in this case is that the defendant published of and concerning the plaintiff that “he swore falsely.” Now, in a suit for slander, these words would not be actionable without a colloquium averring a judicial proceeding and giving them a meaning amounting to' a criminal charge against the plaintiff, for which, if he was guilty, he would be subject to an infamous punishment. But the same words being printed and published are libellous per se without any such averment. In this view of the case, and on these well-established principles of law governing suits for libel — which are in many respects different from those applicable to actions of slander — the proposition to prove the falsity of the affidavit was an offer to' prove the truth of the libel-lous matter as charged in the declaration, which could not be done except under a plea of justification. . In its applicability to this case, the proposition to prove the falsity of the affidavit of the plaintiff. and to prove the truth of the libellous matter are convertible terms and mean the same thing. We think, therefore, that the Court erred in the admission of the testimony on this point.
The ■plaintiff’s counsel also excepts to the instructions of the Court to the jury. The Court charged the juryj in substance, that the plaintiff in his declaration, by the innuendo, alleged that the libellous matter' published by *526 the defendant meant that the plaintiff had been guilty of perjury; that in using the term perjury the plaintiff would he presumed to have used it in its felonious sense; and that if, from the whole proof arising in the case, it did not appear that there had been a judicial proceeding in which legal perjury could have been committed, but the contrary appeared, the plaintiff could not sustain this action. We have not quoted the exact language of the charge of the Court, but have given the substance. The meaning of this charge, in its application to the case before us, is this: that if Haws, the plaintiff, had been qualified to an affidavit that had no relation to a judicial proceeding, and had sworn falsely, he could not be convicted of legal perjury; and if this state of facts appeared from the proof, Stanford, the defendant, could not be guilty of a libel in publishing in reference to such a proceeding that the plaintiff was “a perjured scoundrel,” or had “perjured himself,” because the innuendo of the plaintiff’s declaration alleged the meaning of the defendant to be a charge of perjury in the felonious sense.
In an action for slanderous words, this charge of the Court would certainly be correct. But in this case, which is a suit for a libel, we think it is not. We have shown, in a former part of this opinion, that the Court erred in not observing the difference between these two species of actions.
Now, to print and publish of another that he has sworn falsely or is a perjured scoundrel is libellous without a' colloquium averring that a judicial proceeding was or had been pending in which legal perjury had been committed ; because any publication about a person which tends to excite a sense or feeling of ridicule, contempt, *527 infamy, or disgrace, is libellous. And if the innuendo gives the language used in the publication a more enlarged signification than tbe facts in the case justify, it may be rejected as surplusage. See 1 Chitty, 884, 385, and authorities there cited, where it is said, “But where the new matter stated in an innuendo is not necessary to support the action, it may be rejected as surplusage.” So in this case the charge in the publication of the defendant that the plaintiff was a perjured scoundrel is libellous, and sufficient of itself to sustain an action. And if the innuendo in the declaration made the meaning more extensive, it would not destroy the libellous character of the words, or take away the plaintiff’s right of action, which was good without it.
In the case before us, the declaration avers that the plaintiff published of and concerning the defendant that he had “perjured himself,” and the proof supports this averment. In Van Vechten vs. Hopkins, 1st American Leading Cases, 147, the Court say, quoting from the case of The King vs. Horne, “that as the crime of a libel .consists in conveying and impressing injurious reflections upon the minds of the subject, if the writing be .so understood by all who read it, the injury is done by the publication of these injurious reflections, before the matter comes to the jury and the Court. And if Courts of justice are bound by law to study by any one possible or supposable case or sense in which the words used might be innocent, .such a singularity of understanding might screen an offender, but it would not recall the words or remedy the injury. It would be strange to say, but more so to give out as the law of the land, that a man should be allowed *528 to defame in one sense and defend himself by another.”
The judgment of the Circuit Court will be reversed, and the cause remanded for a new trial.